IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXCHANGE SERVICES, INC. *d/b/a* | § | |
| CENTRAL WAREHOUSE SYSTEMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:15-CV-01873-M |
| | § | |
| SENECA INSURANCE CO., INC., | § | |
| RICHARD CHAKA, NICHOLAS | § | |
| CARLSON, JS HELD, INC., and | § | |
| KATHLEEN FINKENOR, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand [Docket Entry #13].   For the reasons

stated below, because the Court lacks subject matter jurisdiction, the Motion is **GRANTED**, and

the case is **REMANDED** to the 68th Judicial District Court of Dallas County.

### I.    FACTUAL BACKGROUND

Plaintiff Exchange Services, Inc. is suing Defendants for violations of the Texas

Insurance Code, based on alleged underpayment of Exchange Services's claim, under an

insurance policy issued by Defendant Seneca Insurance, Co., Inc.   According to Exchange

Services, the insured property was damaged in a storm, and Seneca assigned Defendants JS

Held, Inc. ("Held"), Kathleen Finkenor, Richard Chaka, and Nicholas Carlson to adjust

Exchange Services's claim.   Pet. [Docket Entry #1-4 at ¶14].   Exchange Services claims that

Held, Finkenor, Chaka, and Carlson intentionally miscalculated its claim, conducted an

incomplete investigation, failed to consider a public adjuster's estimates, materially

misrepresented the policy's terms, and failed to provide a reasonable explanation for concluding

that Exchange Services's entire claim was not covered by the policy.   *Id.* at ¶¶ 15–16.

1

Exchange Services filed a lawsuit in state court, and Defendant Seneca unilaterally removed the case on the basis of diversity jurisdiction [Docket Entry #1].   Forty days after removal, Exchange Services moved to remand [Docket Entry #13].   At the Court's request, Exchange Services filed an Amended Notice of Removal on October 5, 2015, supplementing and clarifying its allegations regarding the parties' citizenship [Docket Entry #37].

## II.   DIVERSITY JURISDICTION

A defendant may remove an action to federal court if it could have originally been filed in federal court.   28 U.S.C. § 1441(a).   District courts generally may hear a case only if it involves a question of federal law or if complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.   *See* 28 U.S.C. §§ 1331, 1332.   The removing party bears the burden of establishing jurisdiction.   *See Miller v. Diamond Shamrock Co*., 275 F.3d 414, 417 (5th Cir. 2001).

For a case to be removable based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side."   *Harvey v. Grey Wolf Drilling Co*., 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co*., 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)).   Individuals are citizens, not merely residents, of the states where they are domiciled.   *Hendry v. Masonite Corp*., 455 F.2d 955, 955 (5th Cir. 1972).   Corporations are citizens of their places of incorporation and principal place of business.   *Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1039 (5th Cir. 1982).*

Exchange Services is a Texas corporation with its principal place of business in Texas. Am. Not. of Rem. [Docket Entry #37 at ¶¶ 4–5].   Seneca is a New York corporation with its

2

principal place of business in New York.   *Id.*   Seneca alleges that Held[1] and Finkenor are New York citizens and that Carlson and Chaka are citizens of Texas, but claims the citizenship of Finkenor, Carlson, Chaka, and Held "must be disregarded" because they were improperly joined. *Id.* at ¶¶ 6–10.   The amount in controversy is not contested: Exchange Services's Original Petition states that the case involves more than $1,000,000 in dispute [Docket Entry #1-4 at ¶8].

### III.   RULE OF UNANIMITY

Exchange Services argues that Seneca's Notice of Removal was procedurally deficient, because Finkenor did not consent to removal.   Mot. to Remand [Docket Entry #13 at 4–6]. Seneca responds that because Finkenor was improperly joined, she was not required to consent. Br. in Opp. To Mot. to Remand [Docket Entry #23 at 17–19].   Alternatively, Seneca argues that Exchange Services waived the right to object to that procedural defect, because it did not move to remand within thirty days of removal.

In a case with multiple defendants, 28 U.S.C. § 1446(b) "requires that all defendants to an action either sign the original petition for removal or timely file written consent to the removal."   *Powers v. United States*, 783 F.3d 570, 576 (5th Cir. 2015) (citing *Getty Oil Corp.*, 841 F.2d at 1262 n. 11).   Each defendant has thirty days after receiving service of the state court petition to consent.   *Id.* (citing 28 U.S.C. § 1446(b)(2)(B)).

Under 48 U.S.C. § 1447(c), a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."   However, a defendant's failure to comply with the

---

[1] Although the Original Petition said that Held "is a foreign for-profit corporation with its principal place of business in the state located in Dallas, Texas (sic)," Held is actually headquartered and incorporated in New York. Held appeared in state court, where it claimed to be "a New York entity with its principal place of business in New York," and Seneca produced records filed with the Texas Secretary of State showing that Held is incorporated under the laws of New York and has its principal place of business there.   Exchange Services has produced no evidence to the contrary. The Court finds that Held is a citizen of New York.

procedural requirements of § 1446(b) regarding unanimity of timely consent does not strip the court of subject matter jurisdiction.   *Getty Oil Corp.*, 841 F.2d at 1263 ("[T]he thirty-day limitations period in section 1446(b) does not affect the jurisdiction of the district court). Therefore, if the non-removing party does not object within thirty days of removal, that party waives its right to remand based on that procedural defect.   *Johnson v. Helmerich & Payne, Inc.,* 892 F.2d 422, 423 (5th Cir. 1990); *Getty Oil Corp.*, 841 F.2d at 1263 ("[A] plaintiff who delays in seeking a remand . . . may be precluded from objecting to a defendant's untimely consent to a defective removal"); *Ross v. City of Lancaster*, 2008 WL 4062082, at *2 (N.D. Tex. Aug. 29, 2008) (Fitzwater, J.) ("[T]he removal was procedurally defective because both defendants did not join the notice of removal.   But because the court has subject matter jurisdiction, the defect in removal is procedural, and plaintiff did not move to remand the case within the time prescribed by 28 U.S.C. § 1447(c), the court will exercise jurisdiction and will not remand the case.").

The Court need not determine whether Finkenor's failure to timely consent to removal caused the removal to be procedurally defective under 48 U.S.C. § 1446(b).   Exchange Services waived its objection to this alleged flaw by failing to object within thirty days of removal, as required by 48 U.S.C. § 1447.   Therefore, this Court will not remand based on Finkenor's failure to consent.

## IV.    IMPROPER JOINDER

The requirement that motions to remand under § 1447 be filed within thirty days of removal does not apply to substantive defects that go to the existence of diversity jurisdiction. *See New Life Assembly of God v. Church Mut. Ins. Co.*, 2015 WL 2234890, at *5 (N.D. Tex. May 12, 2015).   This Court therefore must consider whether diversity jurisdiction exists in this case.   Although Defendants Chaka and Carlson have a common state of citizenship with

4

Exchange Services, Seneca argues that the Court should disregard their citizenship, because they were not properly joined.   If either Charka or Carlson was properly joined, the Court does not have subject matter jurisdiction and must remand.   On the other hand, if they were improperly joined, their joinder would not destroy complete diversity.   *Smallwood v. Ill. Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004).   Improper joinder is a "narrow exception" to the rule of complete diversity, and the removing party bears a heavy burden of establishing improper joinder by clear and convincing evidence.   *Id.* at 576; *Int'l Energy Ventures Mgmt., L.L.C.*, 2015 WL 4979009, at *3.

To establish improper joinder, Seneca must prove either "(1) actual fraud in the pleading of jurisdictional facts, or (2) [the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court."   *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).   In the absence of actual fraud, the test for improper joinder is whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant.[2] *Vaillancourt v. PNC Bank, Nat. Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014); *Smallwood*, 385 F.3d at 571; *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (stating that a removing party must show there is "absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant").   To determine if a defendant has made this showing, courts generally conduct "a Rule 12(b)(6)-type analysis," examining the allegations in the state court petition to determine whether the pleading states a

---

[2]  At least one court has considered the presence of "badges of improper joinder" that indicate an adjuster was improperly joined for the sole purpose of defeating diversity jurisdiction: use of a standard form petition, failure to seek default judgment against an adjuster who has failed to respond, and improbability that a successful claim against the adjuster would provide any financial gain.   *See Plascencia v. State Farm Lloyds,* 4:14–CV–00524–A 2014 U.S. Dist. LEXIS 135081, at *16 – 20 (N.D. Tex. Sept. 25, 2014) (McBryde, J.*).   Compare New Life Assembly of God v. Church Mut. Ins. Co.*, 2015 WL 2234890, at *5 (N.D. Tex. May 12, 2015) (Robinson, J.) (rejecting the badges of improper joinder analysis in part because "court[s] should not be in the business of penalizing a plaintiff who chooses to sue defendants that may not be able to pay . . . a hypothetical judgment entered by the court.   If a plaintiff's complaint states a valid cause of action against individual defendants, the fact that the defendants are insolvent or have limited financial resources should not preclude their joinder.").

claim under state law against the in-state defendant.   *Smallwood*, 385 F.3d at 573.   There is generally not improper joinder if the plaintiff can survive a defendant's Rule 12(b)(6) challenge. *Id*.; *Pharos Capital Group, LLC v. Nutmeg Ins. Co*., 999 F. Supp. 2d 947, 953 (N.D. Tex. Feb. 26, 2014) (Boyle, J.).   However, if a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."   *Smallwood*, 385 F.3d at 573.   Here, because there are no allegations of actual fraud, the Court must analyze whether Seneca has demonstrated that there is no possibility of recovery against the in-state defendants.

Plaintiff has alleged that the non-diverse defendants adjusted its insurance claim and, in doing so, engaged in unfair or deceptive acts under Chapter 541 of the Texas Insurance Code. Specifically, the Original Petition claims Chaka and Carlson engaged in the unfair settlement practices of: 1) "misrepresenting to Plaintiff material facts relating to the coverage at issue," § 541.060(a)(1); 2) "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear," § 541.060(a)(2)(A); 3) "failing to provide Plaintiff with a reasonable explanation of the basis in the policy . . . for the offer of a compromise settlement of Plaintiff's claim," § 541.060(a)(3); 4) "failing within a reasonable time to affirm or deny coverage of the claim," § 541.060(a)(4); and 5) "refusing to pay Plaintiff's claim without conducting a reasonable investigation," § 541.060(a)(7).   Pet. [Docket Entry #1-4 at ¶¶ 31–37].   It also alleges that the non-diverse defendants "compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered," violating § 542.003(5).   *Id.* The issue is whether the Plaintiff can potentially sustain any of these causes of action against Chaka and Carlson.   *Smith-Manning v. State Farm Lloyds*, 2013 WL 5637539 at \*2 (N.D. Tex. Oct.14, 2013) (Lynn, J.); *see also Rubin v. Daimlerchrysler Corp.*, 2005 WL 1214605, \*2 (S.D.

Tex. May 20, 2005).

The Texas Insurance Code allows claimants to sue a "person" for engaging in any act or practice which the Code defines as "an unfair or deceptive act or practice in the business of insurance," specifically including an adjuster as a person.   Tex. Ins. Code. §§ 541.002, 541.151. The Texas Supreme Court and the Fifth Circuit have recognized that insurance adjusters can be individually liable for violating the Texas Insurance Code.   *See Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 282 (Tex. 1998) (applying Art. 21.21, a previous codification of Chapter 541); *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007).

Seneca disputes Exchange Services's allegation that Chaka adjusted its claim, arguing that Held and Chaka are "construction consultants—not insurance adjusters."   Br. in Opp. To Mot. to Remand [Docket Entry #23 at 5–6].   Seneca urges the Court to pierce the pleadings to resolve this fact question, arguing that, unlike insurance adjusters, construction consultants cannot be liable under the Texas Insurance Code.   The Court finds it unnecessary to resolve this question, because Seneca concedes that Carlson, who is a Texas citizen, is an independent insurance adjuster.   *Id.* at 2 ("Finkenor, a Seneca employee, assigned Carlson, an independent adjuster, to the claim.").

The remaining questions are: 1) whether insurance adjusters can be liable for the Insurance Code violations alleged in this case; and 2) if so, whether Exchange Services has alleged sufficient facts to state a claim against Carlson.

This Court has previously held that insurance adjusters can be liable under the provisions at issue here.   The Court has concluded that plaintiffs can recover against adjusters under § 541.060 for "engaging in certain unfair settlement practices, such as: failing to attempt to effectuate a prompt, fair, and equitable settlement of a claim to which the insurer's liability has

7

become reasonably clear [§ 541.060(a)(2)(A)]; failing to provide a policyholder a reasonable explanation of the basis for the denial of her claim [§ 541.060(a)(3)]; failing to affirm or deny coverage within a reasonable time [§ 541.060(a)(4)]; and refusing to pay a claim without conducting a reasonable investigation [§ 541.060(a)(7)]."   *Rogers v. Allstate Indem. Co.*, 2013 WL 2182661, at \*2 (N.D. Tex. May 20, 2013) (Lynn, J.).   This Court also found adjusters properly joined when a plaintiff alleged they "conducted a substandard investigation and failed to evaluate . . . damages properly," failed to "attempt in good faith to effectuate a prompt, fair, and equitable settlement" of the claim, and "failed to promptly provide 'a reasonable explanation of the basis in the policy.'"   *Progressive Island, LLC v. Scottsdale Ins. Co.*, 2013 WL 6065414, at \*2–3 (N.D. Tex. Nov. 18, 2013) (Lynn, J.); *see also, Smith–Manning*, 2013 WL 5637539 at \*2.

Other courts in the Fifth Circuit have found adjusters properly joined in similar circumstances.   *See, e.g., Linron Properties, Ltd. v. Wausau Underwriters Ins. Co.*, 2015 WL 3755071, at \*8 (N.D. Tex. July, 10, 2015) (Boyle, J.) (holding that an adjuster was properly joined when plaintiff alleged he "refus[ed] to identify damage to the structure that was covered under the Policy" and thus failed to attempt to effectuate a fair settlement); *Lopez-Welch v. State Farm Lloyds*, 2014 WL 5502277, at \*8 (N.D. Tex. Oct. 31, 2014) (Lindsay, J.) (finding a plaintiff "sufficiently pleaded a claim" based on "(1) the failure of [the adjuster] to attempt in good faith to effect a prompt, fair and equitable settlement of Plaintiff's claim after . . . liability became clear (§ 541.060(a)(2)(A)); (2) the failure of [the adjuster] to provide [claimant] a reasonable explanation for [the insurer's] denial of her claim or offer of a compromise settlement of her claim (§ 541.060(a)(3)); and (3) the refusal of [the adjuster and insurer] to pay a claim without conducting a reasonable investigation (§ 541.060(a)(7))"); *Harris v. Allstate Tex. Lloyd's*, 2010 WL 1790744, at \*34 (S.D. Tex. Apr.30, 2010) (Lake, J.) (granting a motion to

remand where the petition alleged that the adjuster "failed to conduct a reasonable investigation," and "failed to attempt a fair settlement"); *CD Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 2009 WL 9072641, at *1 (S.D. Tex. July 28, 2009) (Rosenthal, J.) (finding adjusters properly joined when the petition alleged they "misrepresented that the damage and losses were not covered; failed to explain the reasons for their offer of an inadequate settlement; failed to affirm or deny coverage of the claim within a reasonable time; failed to perform a reasonable investigation; and refused to fully compensate plaintiff under the policy terms"); *Jones v. Ace American Insurance Co.,* 2006 WL 3826998, at *4–5 (E.D. Tex. Dec. 22, 2006) (Hughes, J.) (holding that an adjuster could be held liable for failing to attempt to effectuate a prompt, fair, and equitable settlement of a claim and refusing to pay a claim without conducting a reasonable investigation).

This Court is not persuaded that the pleaded provisions of § 541.060 cannot apply to adjusters.   In *Gasch*, the claimants argued that their insurer, *through an adjuster*, "denied their . . . benefits claim even though liability was reasonably clear," or that the insurer, *through the adjuster*, "failed to investigate the claim reasonably."   491 F.3d at 283.   The Fifth Circuit, stating that "[t]he evidence demonstrates that [the insurer] was acting through [the adjuster] when it denied the [claimants'] claim for benefits," concluded that "Texas law clearly authorizes [Chapter 541] actions against insurance adjusters in their individual capacities" and found that the adjuster was properly joined.   *Id.* at 283.   The Fifth Circuit thus held that adjusters can be liable under § 541.060 for their roles in an insurer's evaluation and adjudication of a claim. This broader reading of the Insurance Code is consistent with the Code's text and purpose, which provides that § 541 should "be liberally construed" to promote the purpose of prohibiting unfair or deceptive acts or practices among those in the business of insurance in the state.   Tex. Ins. Code § 541.008.

The Court concludes that adjusters can be liable under the Code for their roles in refusing to pay an insurance claim without conducting a reasonable investigation under § 541.060(a)(7). Adjusters have a role to play in "attempt[ing] in good faith to effectuate a prompt, fair, and equitable settlement of the claim" under § 541.060(a)(2)(A).   *See Linron Properties, Ltd.,* 2015 WL 3755071 at *8 (Boyle, J.); *see also Simmons v. Northfield Ins. Co.*, 2015 WL 5162369, at *4 (E.D. Tex. Sept. 2, 2015); *Russell v. State Farm Lloyds*, 2001 WL 1326501, at *3 (N.D. Tex. Oct. 15, 2001) (Fitzwater, J.) ("Plaintiffs allege that [the adjuster] 'disregarded all pertinent evidence . . .' and 'failed to fully and properly investigate the Plaintiffs' claim.' . . . .   Because both actions could be a means of obstructing, rather than effectuating, a prompt, fair, and equitable settlement of a claim . . . the allegation sufficiently pleads [a claim].").   In the context of a motion to remand, "[a]ny ambiguities are construed against removal and in favor of remand," *Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013), so the Court concludes a claim potentially exists here.

When evaluating whether a party has adequately pled a cause of action against a non-diverse defendant, "the Texas pleading standard applies."   *Int'l Energy Ventures Mgmt., L.L.C.*, 2015 WL 4979009, at *3–4.   "Under the Texas fair notice pleading standard, the pleading need only allow an opposing attorney of reasonable competence . . . [to] ascertain the nature and basic issues of controversy and testimony probably relevant."   *Id.*   Texas courts liberally construe petitions in the plaintiff's favor.   *Progressive Island, LLC*, 2013 WL 6065414, at *2.   Only "if the cause of action "has no basis in law or fact, because either the allegations do not entitle the claimant to the relief sought, or because "no reasonable person could believe the facts pleaded," will the plaintiff have failed to provide fair notice of a potentially valid claim.   Tex. R. Civ. P. 91a.1).

Here, the Original Petition states potential causes of action against Carlson in plain and

concise language, alleging specific actionable conduct by him, and thus providing him with fair notice of the claims alleged.   *Contrast with Griggs*, 181 F.3d at 699.

The Petition claims that "Carlson . . . made numerous errors in estimating the value of Plaintiff's claim, all of which were designed to intentionally minimize and underpay the loss incurred by Plaintiff," "estimated payment of Plaintiff's claim for damages to the Property far below the repair costs," conducted an "incomplete investigation of Plaintiff's claim," "failed to consider Plaintiff's public adjuster's estimates," "failed to provide a reasonable explanation as to why Defendant Seneca was not compensating Plaintiff for the value of Plaintiff's covered loss," and "as a result of . . . Carlson['s] conduct, Plaintiff's claim was underpaid." Pet. [Docket Entry #1-4 at ¶15].

These allegations are nearly identical to those alleged in other cases where this Court has found a claim to have been stated.   *See Smith-Manning,* 2013 WL 5637539 at *3–4; *Progressive Island, LLC*, 2013 WL 6065414, at *2–3; *Rogers*, 2013 WL 2182661, at *3.   In *New Life Assembly of God*, the court found that plaintiff stated a claim by alleging an adjuster "conducted a substandard investigation and inspection of the property, prepared a report that failed to include all of the damages that he noted during the inspection, and undervalued the damages he observed during the inspection . . . [and] performed an outcome-oriented investigation that led to a biased and unfair evaluation of Plaintiff's damages."   2015 WL 2234890, at *5; *see also Harris*, 2010 WL 1790744, at *3–4 (granting a plaintiff's motion to remand where his petition alleged that the adjuster was "tasked with handling the insurance claim," "failed to fulfill this task in the manner required by the Texas Insurance Code," "failed to conduct a reasonable investigation," and "failed to attempt a fair settlement").

Whether or not Exchange Services will ultimately prevail on its claims against Carlson is irrelevant.   It is not the Court's role to evaluate the merits of the claims at this stage of the

litigation.   *Rogers*, 2013 WL 2182661, at *3.   The court is to "carefully distinguish an attack on the overall merits of the case from a showing that defendants were improperly joined."   *CD Mgmt. Corp.*, 2009 WL 9072641, at *3.   The Court concludes Seneca has not shown that there is "absolutely no possibility" that Exchange Services could recover against Carlson in state court.

## V.    CONCLUSION

Because Defendant Carlson and Plaintiff Exchange Services are both citizens of Texas, the Court therefore does not have subject matter jurisdiction over this case.   The Plaintiff's Motion to Remand is **GRANTED**, and the case is **REMANDED** to the 68th Judicial District Court of Dallas County.   Because the Court does not have subject matter jurisdiction, it does not reach Finkenor's Motion to Dismiss for Lack of Personal Jurisdiction [Docket Entry #3].

**SO ORDERED**.

October 16, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS